UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:06-CV-288-PRC |
| | ) | |
| DAVID BARICK, BARICK BUILDERS, INC., | ) | |
| BROOKE CONAWAY, and MEREDITH | ) | |
| CONAWAY, | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the Court on Westfield's Motion for Summary Judgment [DE 37],

filed on December 26, 2007.  For the following reasons, the Court grants Westfield's Motion for

Summary Judgment.

PROCEDURAL BACKGROUND

Westfield Insurance Company ("Westfield") filed this cause of action on August 15,

2006, seeking a declaratory judgment.  Westfield issued commercial insurance policies to David

Barick ("Barick") and Barick Builders, Inc. ("BBI").  Westfield requests that the Court find that

it has no duty to indemnify or defend Barick or BBI against underlying state court lawsuits filed

by Brooke Conaway ("Brooke") and Meredith Conaway ("Meredith") (collectively, "the

Conaways").  Westfield pleaded diversity jurisdiction as its basis of federal subject matter

jurisdiction.

On September 6, 2006, Brooke and Meredith Conaway each filed a Motion to Dismiss,

arguing that this matter should be dismissed because the underlying state court actions fail to

satisfy the federal diversity jurisdiction requirement that at least $75,000 be in controversy.  On

November 17, 2006, the District Court issued an Opinion and Order, finding that the amounts in

controversy in the underlying lawsuits exceed $75,000, and denying the Conaways' Motions to Dismiss.

On December 26, 2007, Westfield filed its Motion for Summary Judgment.  On January 28, 2008, the Conaways filed Brooke Conaway and Meredith Conaway's Memorandum in Opposition to Motion for Summary Judgment.  On January 30, 2008, Barick and BBI filed a David Barick and Barick Builders, Inc. Brief in Opposition to Motion for Summary Judgment.  On February 11, 2008, Westfield filed Westfield's Reply Brief in Support of Motion for Summary Judgment.  The Motion for Summary Judgment is now fully briefed and before the Court.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636.


## FACTUAL BACKGROUND

The following facts are taken from the pleadings, the parties' briefing on Westfield's Motion for Summary Judgment, and the documents submitted in support or in opposition thereof.  Any facts in dispute are construed in a light most favorable to Barick, BBI, Brooke, and Meredith, the nonmoving parties.

Plaintiff, Westfield, is an Ohio corporation with its principal place of business in Westfield Center, Ohio.  Defendant, David Barick ("Barick"), is a citizen of the State of Indiana who resides in Dyer, Lake County, Indiana.  Defendant, Barick Builders, Inc. ("BBI"), is an Indiana corporation with its principal place of business in Dyer, Lake County, Indiana. Defendant, Brooke Conaway ("Brooke"), is a citizen of the State of Indiana who resides in St.

John, Lake County, Indiana.  Defendant, Meredith Conaway ("Meredith"), is a citizen of the State of Indiana who resides in St. John, Lake County, Indiana.

Westfield issued the following insurance policies to BBI:

Westfield's Commercial Package Policy No. CWP 3 435 586, issued to BBI as the named insured, with effective dates of coverage of June 2, 2004, to June 2, 2005; and

Westfield's renewed Commercial Package Policy No. TRA 3 435 586, issued to BBI as the named insured, with effective dates of coverage of June 2, 2005, to June 2, 2006 (collectively, "the Policies").

The incidents that give rise to this action involve the construction of two homes in St. John, Lake County, Indiana.  On April 10, 2004, Brooke entered into a "Purchase Agreement" for BBI to construct a residential home for Brooke at 9767 Hart Street, St. John, Lake County, Indiana. On September 12, 2004, Brooke closed on, and moved into her home.  On December 20, 2005, Brooke filed a Complaint against Barick and BBI in the Lake Superior Court, East Chicago Division.  Thereafter, the court transferred her lawsuit to the Lake Superior Court, Crown Point Division, where it is currently pending.

On April 10, 2004, Meredith entered into a "Purchase Agreement" for BBI to construct a residential home for Meredith at 9765 Hart Street, St. John, Lake County, Indiana.  On September 30, 2004, Meredith closed on, and moved into her home.  On February 3, 2006, Meredith filed a Complaint against Barick and BBI in the Lake Superior Court, East Chicago Division.  On July 13, 2007, Meredith filed a First Amended Complaint in the Lake Superior Court.

Brooke and Meredith assert the following three claims against Barick and BBI:

Count I – fraud by misrepresenting their abilities to complete Brooke's and Meredith's homes as required by the drawings, industry standards, state building codes, and local ordinances.

Count II – breach of contract by failing to complete Brooke's and Meredith's homes in a workmanlike manner and in compliance with the drawings, industry standards, state building codes, and local ordinances.

Count III – personal injury by causing Brooke and Meredith to experience respiratory pain, headaches, and the inability to sleep due to exposure to mold, which formed as a result of BBI's and Barick's substandard construction practices.[1]

In a letter dated February 20, 2006, Barick and BBI requested that Westfield defend and indemnify them under the Policies against Brooke's and Meredith's lawsuits. Westfield denied coverage under the Policies for Brooke's and Meredith's lawsuits.

On October 12, 2005, Brooke filed a Chapter 7 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Indiana. On February 3, 2006, Barick and BBI filed a counterclaim in state court, alleging that Brooke committed acts of defamation, malicious interference with prospective advantage, malicious interference with contract, intentional infliction of emotional distress, malicious prosecution, and conspiracy. On February 13, 2006, the bankruptcy court issued a discharge order granting Brooke's petition. On February 21, 2006, the bankruptcy court closed the matter.

On June 26, 2006, Brooke moved the bankruptcy court to reopen her bankruptcy for the purposes of adding her lawsuit against Barick and BBI to her personal property schedule, adding Barick's and BBI's counterclaim to her list of unscheduled creditors, and tendering amended schedules. On June 27, 2006, the bankruptcy court reopened the matter and permitted Brooke to file her amended schedules. On August 14, 2006, the bankruptcy court reclosed Brooke's bankruptcy.

---

[1]As explained further *infra*, Count III differs between the two complaints in that Meredith asserts a claim for negligence and Brooke asserts a claim for the intentional tort of assault.

On August 15, 2006, Westfield filed this action for declaratory judgment.  On August 30, 2006, Barick and BBI filed an adversary complaint in the bankruptcy matter, contending that the counterclaim was not dischargeable.  On April 3, 2007, Barick and BBI filed their amended adversary complaint in the bankruptcy matter.  On April 20, 2007, the bankruptcy court issued an order reopening Brooke's bankruptcy, and ordered the appointment of an interim trustee to investigate whether the trustee should take over the prosecution of Brooke's lawsuit.  On June 15, 2007, the trustee issued its report of no distribution.  On July 16, 2007, the trustee reported that the bankruptcy estate had no interest in pursuing Brooke's lawsuit.

On August 15, 2007, the bankruptcy court issued an order abstaining from deciding Barick's and BBI's adversary complaint.  The bankruptcy court further stayed all proceedings as to Brooke's bankruptcy until a final judgment is entered by the state court, at which time the court would give claim preclusion or res judicata effect as to any such judgment.  On October 5, 2007, the bankruptcy court issued an order reclosing Brooke's bankruptcy.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary judgment is appropriate–in fact, is

5

mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law.  In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.  When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists.  *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this

rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

Arguing for summary judgment, Westfield contends that the claims contained in the Conaways' state court lawsuits are not covered by the Policies. Opposing summary judgment, Barick and BBI first argue that the Court should consider more than the pleadings and relevant insurance policies in determining Westfield's duty to defend. Barick and BBI, as well as the Conaways, next argue that the Conaways' underlying state court actions are such that Westfield is required to defend and/or indemnify Barick and BBI.

Sitting in diversity, the Court shall apply the law of the forum state, here Indiana. *See Automotive Finance Corp. v. Smart Auto Center, Inc.*, 334 F.3d 685, 688 (7th Cir. 2003). In

Indiana, insurance contracts are governed by the same rules of construction that govern other contracts.  *See Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000) (citing *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985)).  Clear and unambiguous insurance policy language should be given its plain and ordinary meaning.  *See Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006).  Generally, interpretation of an insurance contract is a question of law appropriate for summary judgment, even if the policy is ambiguous.  *See Newnam Mfg., Inc. v. Transcontinental Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007).

### A.  Scope of analysis

In its analysis of whether the Policies require it to defend Barick and BBI against the Conaways' claims, Westfield examines only the language of the Policies and the Conaways' state court complaints.  Barick and BBI argue that the Court's analysis should include additional information.  This issue is settled under Indiana law.

Following the decision in *Transamerica Insurance Services v. Kopko*, a number of Indiana courts analyzed the scope of evidence to be considered in determining an insurer's duty to defend.  570 N.E.2d 1283, 1285 (Ind. 1991).  *Kopko* succinctly states that an insurer's "duty to defend is determined solely by the nature of the complaint."  *Id*. at 1285.  However, the case has not been interpreted to stand for such a neat holding.  Upon closer look, in *Kopko*, the defendant attempted to hypothecate a theory that would bring an underlying claim within the plaintiff insurance company's policy provisions.  However, the hypothesized theory was inconsistent with the claim set forth by the complaint, and the court refused to extend coverage to the defendant's proposed claim.  *See id*.  The court also found that an exclusion provision contained within the insurance policy applied, and held that the insurance company had no duty to defend.  *See id*.  Subsequently, courts have interpreted *Kopko* in a variety of ways.  Courts have either

found that in concluding there was no duty to defend, the *Kopko* court "relied on facts presumably beyond the allegations of the underlying complaint . . .," *Trinity Homes LLC v. Ohio Casualty Insurance Company*, No. 1:04-CV-1920, 2007 WL 1021825, at *5 (S.D. Ind. Mar. 30, 2007), or have distinguished *Kopko*, *see Monroe Guaranty Insurance Company v. Monroe*, 677 N.E.2d 620, 623-24 (Ind. Ct. App. 1997) (finding *Kopko* distinguishable because in *Monroe* there was not a dispute concerning the facts underlying the complaint, and therefore the court did not have to look beyond the allegations), or have failed to cite it entirely, *see e.g. Jim Barna Log Systems Midwest, Inc. v. General Casualty Insurance Company of Wisconsin*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003).

Whether the reasoning of *Kopko* is modified, or its holding is distinguished, more recent precedent takes a settled view that information beyond the complaint and the relevant insurance policy may be considered.  In *Freidline v. Shelby Insurance Company*, the court held, "Where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim is patently outside of the risk covered by the policy, the insurer may properly refuse to defend."  774 N.E.2d 37, 42 (Ind. 2002).  Further defining the proper analysis of a duty to defend, the court in *Jim Barna* held, "it is the nature of the claim, not its merits, that determines the insurer's duty to defend."  *See* 791 N.E.2d at 823 (citing *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980)).

Recently, in *Trinity Homes*, the United States District Court for the Southern District of Indiana considered whether a question for certification to the Supreme Court of Indiana existed as to what materials may be reviewed in determining an insurance company's duty to defend. *See* 2007 WL 1021825, at *4.  The court found that it did not, this being a settled question of law in Indiana.  *See id.* at *7.  Ultimately, the *Trinity Homes* court held that "an insurer is entitled to

9

rely on the allegations of the underlying complaint as well as on those facts known or ascertainable by the insurer through a reasonable investigation." *Id*.

In accordance with established Indiana precedent, the arguments regarding insurance coverage in the instant matter are not limited to the language of the Policies and the underlying Conaway state court complaints. Information discovered in a reasonable investigation of the nature of the Conaways' claims is admissible as well.

### B. Policies' coverage

In their state court complaints,[2] the Conaways assert three claims: (1) fraud, alleging that Barick and BBI misrepresented their abilities to complete the homes as required by the drawings, industry standards, state building codes, and local ordinances; (2) breach of contract, alleging that Barick and BBI failed to complete the homes in a workmanlike manner and in compliance with the drawings, industry standards, state building codes, and local ordinances; and (3) personal injury, alleging respiratory pain, headaches, and the inability to sleep due to exposure to mold that formed as a result of Barick's and BBI's substandard construction. Westfield contends, for separate reasons as to each underlying claim, that it has no duty to defend or indemnify Barick and BBI with respect to any of the Conaways' claims.

An insurer's duty to defend is broader than its duty to indemnify. *See Kopko*, 570 N.E.2d at 1285 (citations omitted). As noted above, an insurer's duty to defend, at least in part, is determined by comparing the policy language to the allegations set forth in the underlying complaints. *Id*. at 1285. In addition, the court considers the facts known or ascertainable through a reasonable investigation of the allegations contained in the complaints. *See Trinity*

---

[2]On record are a Complaint filed by Meredith, a Complaint filed by Brooke, and a First Amended Complaint filed by Meredith. The Court refers to Brooke's Complaint and Meredith's First Amended Complaint when analyzing the claims asserted by the Conaways in their "complaints."

*Homes*, 2007 WL 1021825, at *6.  A court faced with a claim that an insurer's duty to defend is mandated may consider evidentiary materials offered by the parties to show coverage.  *See Wayne Twp. Bd. of School Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995).  "When the nature of a claim is obviously not covered by the policy of insurance, there is no duty to defend."  *See Kopko*, 570 N.E.2d at 1285 (citations omitted).

Here, the Policies at issue are divided into several different forms of coverage.  Of relevance to this matter is the "Commercial General Liability Coverage Form" ("CGL"), which insures against "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies."  Pl.'s Aff. Summ. J., Ex. 3, at 5 (POLICIES, CGL form, p. 1 of 16).  The CGL coverage applies only if the "'bodily injury' or 'property damage' is caused by an 'occurrence that takes place in the 'coverage territory[.]'"  *Id*.  Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id*. at 14 of 16.  It is under this policy language that the parties dispute whether Westfield has a duty to indemnify and/or defend.  The Court will analyze each of the Conaways' three state law claims separately.

1.     *Fraud*

The Conaways' complaints assert claims against Barick and BBI for fraudulent inducement to contract.  The Conaways allege that during the course of negotiations, Barick and BBI made numerous false and misleading verbal and written representations regarding their ability to complete the Conaways' homes as required by the drawings, industry standards, state building codes, and local ordinances.

Westfield argues that the Conaways' claims of fraud do not allege an insured "occurrence."  Westfield cites *Jim Barna* for support, and the Court finds the case to be on point.

11

*See* 791 N.E.2d 816.  The insured in *Jim Barna* sough liability coverage from its insurer against a claim of fraud.  The underlying plaintiff alleged that the insured, hired to provide the plaintiff with a log home, fraudulently and recklessly misrepresented that it had found a contractor who was qualified to construct the home.  The court began its analysis by setting forth the elements of a claim for fraud in Indiana, which include a requirement that the allegedly fraudulent statement was made with knowledge that it was false or was made recklessly without knowledge of its truth or falsity.  *See id.* at 830 (citing *Baxter v. I.S.T.A. Ins. Trust*, 749 N.E.2d 47, 52 (Ind. Ct. App. 2001)).  *Jim Barna* recognized that there is an exception to the knowing or reckless prima facie requirement for claims of negligent misrepresentation; however, the exception is limited to special relationships such as that between an employer and its employee.  *See Jim Barna*, 791 N.E.2d at 830 (citing *Darst v. Ill. Farmers Ins. Co.*, 716 N.E.2d 579, 584 (Ind. Ct. App. 1999)).  The court found that the plaintiff's underlying claim of fraud, which did not allege a special relationship, required a showing of knowing or reckless conduct.  Therefore, the court found that the fraud claim did not fit within the insurance policy's coverage for an "occurrence" or an "accident" because it could not be a claim for an "unexpected happening without intention or design."  *See id*.

The same reasoning applies to the Conaways' claims in this matter.  The Conaways allege fraudulent inducement, which requires showing an intentionally false statement or a statement that was recklessly made with regard to falsity, absent a narrow exception for negligent misrepresentation, discussed *infra*.  Neither a reckless nor an intentional statement will sustain a claim of fraud within the Policies' definition of an "occurrence."  As a result, the Conaways' claims, to the extent they allege an act of intentional or reckless fraud, do not allege an occurrence.

12

Westfield's duty, or lack thereof, to defend against the Conaways' fraud claims is not so easily resolved.  For in their response brief, while Barick and BBI fail to identify a specific provision of the Policies that purportedly provides insurance coverage for defense or indemnity of the claims, they argue that the Conaways' complaints fail to adequately set forth claims of fraud.  In an affidavit submitted in opposition to summary judgment, Barick states, "At no time did I either intend to deceive nor did I make any false statements that deceived Meredith and/or Brooke Conaway."  Barick & BBI Resp. Br. Summ. J., Ex. D, at 3 (Barick Aff., at ¶ 7).  The Court views this argument as primarily a substantive defense to the fraud claims, which should be properly made in the underlying state court proceedings.  The argument, at least directly, fails to address the issue presently before this court– whether Westfield is duty bound to defend against the Conaways' fraud claims.

Westfield interprets Barick's and BBI's argument differently.  Westfield believes the argument to be an attempt by Barick and BBI to transform the fraud claims into claims for negligence, relying primarily on Barick's assertion that he did not "intend to deceive . . ." Barick Aff. at ¶ 7.  Westfield thus raises the possibility that the claims are for negligent misrepresentation.  Westfield argues against allowing Barick's contention to form the basis of a duty to defend against the claims of fraud.  Westfield contends that self-serving statements, such as those contained in Barick's affidavit, should not be permitted to manufacture a duty to defend. For support, Westfield turns to *Kopko*.  *See* 570 N.E.2d at 1284-85.

The underlying plaintiff in *Kopko* asserted a claim for fraud against the insured developer.  In his defense, the insured argued that he forgot to mention a certain condition to the plaintiff, and therefore the plaintiff's fraud claim sounded in negligence. The insured claimed that negligence implicated general liability coverage under a policy that required his insurer to

defend against all claims other than those based on intentional acts.  Analyzing the insured's argument, the court first found that the plaintiff's claim, which alleged that the insured had concealed information of defective soil conditions, did not form an "occurrence," defined by the policy as "an accident . . . neither expected nor intended . . ." *Id*.  The court further found that the insured's argument pleading forgetfulness may be a substantive defense to the plaintiff's underlying claim but "it does not change the theory of [the] complaint, which sounds entirely in intentional tort and fraud."  *Id*. at 1285.   The court held that the insurer was fully justified in denying liability coverage to the insured on the claim of fraud.  *See id*.

Here, the Court finds the analysis in *Kopko* persuasive.  The court in *Kopko* did not allow the insured's representations to transform the claim against him into an "occurrence."  And the Conaways' claims for fraudulent inducement contain no suggestion that they are based on an accident.  Thus, Barick's affidavit alone will not reform the Conaways' claims for fraud into "occurrences" or an "accidents."

Finally, the Court notes several of the Policies' relevant exclusions.  The  Conaways' fraud claims seek in large part, if not entirely, remedies for shortcomings in the construction of their homes.  The Policies contain exclusions that apply to such damages.  Two exclusions address "property damage," defined as:

> a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

POLICIES, CGL Form, p. 15 of 16.  The Policies exclude "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf

14

are performing operations, if the 'property damage' arises out of those operations," and "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Id*. at 4 of 16.  The exclusions preclude Westfield from a duty to defend to the extent that the Conaways' claims for fraud concern any work done by or on behalf of Barick or BBI, and any restoration that must be done as a result of Barick's or BBI's work.

The Policies also contain an exclusion for "damage to your work."  "Your work" is defined as "[w]ork or operations performed by you or on your behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations." *Id*. at 16 of 16.  "Your work" includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and . . . [t]he providing of or failure to provide warnings or instructions." *Id*.  The Policies exclude "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"[3] *Id*. at 5 of 16.  The exclusion for "your work" provides that Westfield is under no duty to defend any claims by the Conaways for damage to work completed by Barick or BBI. Thus, to the extent that the Conaways' claims for fraud seek to recover due to damage to

---

[3]The Policies define the term "products-completed operations hazard" as follows:
"Products-completed operations hazard":
a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:
(a) When all of the work called for in your contract has been completed.
(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
POLICIES, CGL Form, p. 15 of 16.

Barick's or BBI's work, the "your work" exclusion relieves Westfield from any duty to provide a defense against those claims.  The Court finds that Westfield has shown that the Conaways' claims of fraud are not offenses that require it to defend Barick and BBI, and awards summary declaratory judgment to Westfield as to those claims.

2.    *Breach of contract*

Next, the Conaways allege in their complaints that Barick and BBI breached a contract with the Conaways by failing to do the following: (1) perform their duties in a workmanlike manner; (2) conform to drawings and construction industry standards; and (3) meet code and local ordinance requirements.  Barick and BBI contend that these allegations fall within the definition of "occurrence" as set forth by the Policies, and as a result, the charges must be defended by Westfield.  Westfield contends that the claims are not covered by the Policies.

Again Barick and BBI fail to refer to any provisions in the Policies that provide liability coverage for the Conaways' breach of contract claims.  Instead, they submit a legal argument regarding Indiana courts' interpretation of CGL coverage.  Barick and BBI cite *Indiana Insurance Company v. DeZutti*, 408 N.E.2d 1275 (Ind. 1980), for the proposition that "CGL policies do not cover faulty workmanship, but rather faulty workmanship causing an accident." Barick & BBI Resp. Br. Summ. J., at 8.  This is an inaccurate statement, and even if it were accurate, it is not entirely supportive of Barick's and BBI's argument.  The *DeZutti* court considered whether to extend CGL coverage to a loss caused by a contractor's faulty construction.  Under the policy at issue, the court found that "what is covered by the policy is defective workmanship which causes personal injury or property damage *not excluded under some provision of the policy*." *Id*. at 1279 (emphasis added).  Interpreting the policy exclusions, the court excluded CGL coverage for damage to the insured's work, or work done on his behalf,

16

resulting from the work itself or any part of that work.  *See id*. at 1281.  The court declined to

extend CGL coverage to the contractor for claims based on his faulty construction.  *See id*.

Taking the analysis of relevant precedent a step further, generally, Indiana law

recognizes that CGL coverage is designed to cover liabilities exclusive of claims for breach of

contract.  *See Acuity Ins. Co. v. Powersource Transp. Inc.*, No. 2:04-CV-82, 2005 WL 2098045,

at *7 (N.D. Ind. Aug. 29, 2005) (Simon, J.) (discussing a CGL policy at issue in the matter, the

court noted, "Indiana courts have consistently held that claims arising out of a contractual

relationship are not an 'occurrence' or 'accident.'") (citations omitted); *Jim Barna*, 791 N.E.2d

at 824, *cert. denied* (citing *DeZutti*, 408 N.E.2d at 1279) (". . . in a CGL Policy, 'The coverage is

for tort liability for physical damages to others and not for contractual liability of the insured for

the economic loss because the product or completed work is not that for which the damaged

person bargained.'"); *R.N. Thompson & Assocs., Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160,

165 (Ind. Ct. App. 1997) (finding that breach of contract action for faulty workmanship and

design and use of defective materials did not arise from an "occurrence" and was "not covered

by [the insured's] CGL policies.").

Here, the Policies cover certain occurrences.  As stated *supra*, the Policies define

"occurrence" as "an accident, including continuous or repeated exposure to substantially the

same general harmful conditions."  POLICIES, CGL Form, p. 14 of 16.  The Conaways'

complaints allege that Barick and BBI breached contractual obligations by failing to comply

with certain standards.  The claims sound in contract law, and do not allege an "occurrence" or

an "accident."  Indiana courts have long distinguished actions arising from breach of a

contractual obligation from those arising from an "occurrence" or "accident" as contemplated by

CGL insurance coverage.  Here, the language of the CGL policies is in line with the cases cited

17

above and is identical to the policy in *Acuity Insurance*, 2005 WL 2098045, at *7.  Thus, the Court sees no cause to depart from well settled Indiana law on this topic.  As a result, the Court awards summary declaratory judgment to Westfield and finds that it has no duty to indemnify or provide a defense to Barick and BBI against the Conaways' breach of contract claims.

3.      *Personal injury*

The Conaways' final claims are titled "Personal Injury - Negligence" in Meredith's First Amended Complaint and simply "Personal Injury" in Brooke's Complaint.  Barick & BBI Resp. Br. Summ. J., Ex. A, at 6; Compl., Ex. 2, at 5.  The Court will analyze the claims separately.

a.      Brooke's Complaint

Barick and BBI, as well as the Conaways, encourage the Court to construe the title of the personal injury claim in Meredith's First Amended Complaint as a signal that both Conaways intended for their claims to be founded on theories of negligence.  However, Brooke's Complaint, her only complaint, alleges that Barick and BBI committed personal injury through the "tort of assault," and also referred to the alleged wrong as an "intentional tort."  Compl., Ex. 2 at 6.  Further, there is no mention in Brooke's Complaint of a duty on the part of Barick or BBI.  Duty is one of the hallmarks of a claim for negligence.  *See Parsons v. Arrowhead Golf, Inc.*, 874 N.E.2d 993, 996-97 (Ind. Ct. App. 2007) ("Absent a duty, there can be no breach and, therefore no recovery in negligence.") (quotations and citations omitted).  Rather, Brooke specifically alleges that Barick and BBI committed an intentional wrong, which requires no showing of a duty.  Because the Policies indemnify and defend against accidents only, Brooke's allegation of an intentional tort does not fit within their coverage.  As a result, the Court grants summary declaratory judgment to Westfield, finding that it has no duty to indemnify or provide a defense to Barick and BBI against Brooke's personal injury claim.

b.      Meredith's First Amended Complaint

Turning to Meredith's First Amended Complaint, she contends that Barick and BBI breached a duty to timely respond to her complaints concerning water damage to her home. Meredith alleges that as a direct result of Barick's and BBI's breach, mold developed in her home, causing her to suffer respiratory pain, headaches, and sleep deprivation.   Meredith contends that because her personal injury claim is predicated on a theory of negligence, and does not allege that Barick or BBI committed an intentional tort with foreseen damages, nothing in the First Amended Complaint, nor anything discoverable through a reasonable investigation, would lead to a conclusion that the claim falls outside the Policies' coverage.

Westfield agrees that Meredith's claim properly alleges an "occurrence" within the Policies' coverage.   However, Westfield contends that the claim is subject to the Policies' "Fungi Or Bacteria" exclusion, which excludes:

> "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, contact with, exposure to, existence of, or presence of, "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage. . . .
>
> Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

POLICIES, "Fungi Or Bacteria" exclusion.  The Policies define "fungi" as "any type or form of fungus, including *mold* or mildew and any myotoxins, spores, scents or byproducts produced or released by fungi." *Id*. (emphasis added).

The Court finds that Meredith's personal injury claim is, upon examination of the facts alleged in the First Amended Complaint, subject to the Policies' "Fungi Or Bacteria" exclusion.

In their response, Barick and BBI look beyond the facts contained in the pleading.  They argue that based on information discovered investigating the First Amended Complaint, mold was not the cause of Meredith's personal injuries, and therefore the "Fungi Or Bacteria" exclusion does not apply.  Barick and BBI contend that the deposition testimony of Meredith's physician, Kenneth W. Blumenthal, D.O., establishes that a genuine issue of fact exists as to whether her personal injuries resulted from exposure to something other than mold.  At deposition, Dr. Blumenthal testified that he could not definitively say that Meredith's injuries were caused by environmental conditions.  He testified that tests performed analyzing Meredith's allergies were weakly positive for a species of house dust mite and negative for the species of mold that were tested for.  Dr. Blumenthal testified that there are approximately 30,000 species of molds, and while mold testing is extensive, not all types can be tested for.  A fair reading of Dr. Blumenthal's deposition testimony is that Meredith's personal injuries might be caused by a species of mold that was not or cannot be tested for, by dust mites, or by something else.  Dr. Blumenthal concluded that he "cannot render an accurate opinion" or "definitively say" that causation is present in this case with regard to a specific environmental cause.  Barick & BBI Resp. Summ. J., Ex. E, at 12 (Blumenthal Dep. at 12).

The Court finds that Dr. Blumenthal's testimony goes to the merits of Meredith's claim. Dr. Blumenthal's analysis goes beyond investigating the nature of the claim asserted by Meredith, which is a claim for personal injuries resulting from exposure to mold.   Dr. Blumenthal suggests an alternate claim, a claim for personal injuries due to another, unspecified, cause.  This theory was derived independent of any assertions contained in the First Amended Complaint.  Thus, Dr. Blumenthal's testimony is evidence beyond the reasonable investigation of the facts underlying the First Amended Complaint, and is beyond the scope of evidence that

the Court may look to in determining whether Westfield has a duty to defend.  Dr. Blumenthal's testimony may prove relevant to the underlying state court litigation, but it does not affect the duty to defend addressed in this matter.  The Court finds that because the nature of the claim alleged by Meredith is personal injuries due to mold, the Policies' "Fungi Or Bacteria" exclusion applies.  As a result, Westfield is granted summary declaratory judgment as to its duty to indemnify or defend Barick and BBI against Meredith's personal injury claim.

### C.  Brooke's bankruptcy

Finally, the Court addresses what impact, if any, Brooke's bankruptcy has on this matter. Westfield raised Brooke's bankruptcy in its Motion for Summary Judgment and supporting brief, arguing that the bankruptcy matter is closed and should not prevent the Court from ruling on the pending Motion for Summary Judgment.  Barick, BBI, and the Conaways failed to submit any arguments regarding Brooke's bankruptcy in their response briefs and have waived the opportunity to now do so.

"[T]he stay of an act against property of the estate . . . continues until such property is no longer property of the estate[.]" 11 U.S.C. § 362(c).  "[T]he stay of any other act . . . continues until the earliest of . . . (a) the time the case is closed; (b) the time the case is dismissed; or (c) if the case is a case under chapter 7 of this title concerning an individual . . . , the time a discharge is granted or denied[.]" *Id*.

Here, on November 9, 2006, Barick and BBI filed an Amended Suggestion of Bankruptcy with the Court, stating that Brooke filed a bankruptcy action in the United States Bankruptcy Court for the Northern District of Indiana, and that they believed that a stay was in place at that time.  In an order dated August 15, 2007, the United States Bankruptcy Court Judge stayed "all further proceedings as to [Brooke's bankruptcy], and when a final non-appealable

judgment is entered by the state court, this Court shall thereafter give claim preclusive or res judicata effect as to any such judgment in deciding the [Brooke bankruptcy]." *In re Brooke Elizabeth Conaway*, No. 05-67261, Memorandum Opinion and Order, at 3 (Bankr. N.D. Ind. Aug. 15, 2007) (Klingeberger, J.). Most recently, on October 5, 2007, the United States Bankruptcy Court Judge issued an order taking judicial notice that the matter had been resolved by order dated July 16, 2007, and officially closing the matter. The timing of events in Brooke's bankruptcy matter, pursuant to 11 U.S.C. § 362(c)(2)(A), render the matter closed and the stay is no longer in effect. Thus, the Court finds that Brooke's bankruptcy proceeding does not prevent it from ruling on Westfield's Motion for Summary Judgment.

## CONCLUSION

Based on the foregoing, and pursuant to the summary judgment standard of Rule 56(c) of the Federal Rules of Civil Procedure, Westfield has established that there is no genuine issue of material fact and that it is entitled to declaratory summary judgment as a matter of law as to its duty to defend and/or indemnify against the Conaways' state court claims against Barick and BBI for fraud, breach of contract, and personal injury. Therefore, Westfield's Motion for Summary Judgment [DE 37] is **GRANTED** in all respects; **JUDGMENT is hereby ENTERED** in favor of Plaintiff Westfield Insurance Company and against Defendants David Barick, Barick Builders, Inc., Brooke Conaway, and Meredith Conaway. All pre-trial and trial settings are **VACATED**.

SO ORDERED this 3rd day of April, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record

22